# UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HATTIE MAE REYNOLDS,

    Plaintiff,

v.                                            Case No: 6:18-cv-1921-Orl-28KRS

CITY OF DAYTONA BEACH and
AUSTIN CLAYTON,

    Defendants.

## ORDER

In her five-count Complaint, Plaintiff Hattie Mae Reynolds brings claims under federal and Florida law against Defendants City of Daytona Beach (Daytona) and Officer Austin Clayton in his individual capacity. (See Doc. 1-1). Reynolds asserts claims pursuant to 42 U.S.C. § 1983 for false imprisonment and false arrest in violation of the Fourth Amendment to the United States Constitution and related state law claims for false arrest and negligent infliction of emotional distress.[1] (See id. at 6–12). Daytona and Clayton now move to dismiss Reynolds' Complaint, arguing that Reynolds fails to state a claim upon which relief can be granted and that the defense of qualified immunity protects Clayton. (See Doc. 4). Reynolds opposes this motion. (See Doc. 9). Upon consideration of the law and the submissions of the parties, the Court agrees with Daytona and Clayton.

---

[1] Reynolds filed this case in state court. Daytona and Clayton removed the case to this Court, invoking this Court's federal question jurisdiction under 28 U.S.C. § 1331 for the federal claims asserted against them and asking the Court to exercise its supplemental jurisdiction under 28 U.S.C. § 1367 to consider Reynolds' related state law claims. (See Doc. 1).

As discussed below, Reynolds' Complaint fails to state cognizable federal or state claims, but Reynolds will be granted leave to file an amended complaint.

I. **Background**[2]

Though Reynolds' Complaint is devoid of significant factual detail, it appears that the interaction between Reynolds and Clayton began because of an altercation between Reynolds and her granddaughter. (See Doc. 1-1 at 5). Clayton, a Daytona Beach police officer, arrived at Reynolds' home to assist Reynolds in removing her granddaughter from the home. (See id.). Reynolds is a ninety-five-year-old woman, (see id. at 4), and Reynolds' granddaughter is forty-six years old, (see id. at 5). Clayton arrested Reynolds for allegedly striking her granddaughter in the face with a shoe, charging her with domestic battery in violation of Section 741.28, Florida Statutes. (See id.). Reynolds claims that this accusation is false and that Clayton used false statements to justify the arrest. (See id. at 4–5). Reynolds further asserts that Clayton did not take a statement from her granddaughter, knew that Reynolds and her granddaughter did not reside together as required by the domestic violence statute, and did not establish whether the alleged contact between Reynolds and her granddaughter was intentional or consensual. (See id.).

Reynolds alleges in the Complaint that Clayton unlawfully arrested her because he relied on Daytona training materials requiring officers to make an arrest if they have probable cause to believe an act of domestic violence has occurred. (See id. at 5). Reynolds also accuses Daytona of failing to properly train and supervise its officers

---

[2] The facts included in this section are taken entirely from Reynolds' Complaint and the attachments to the Complaint. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (noting that at the motion-to-dismiss stage, courts must operate "on the assumption that all the [factual] allegations in the complaint are true (even if doubtful in fact)").

2

regarding arrests, investigations, and not including false statements in police reports. (See id. at 3). In support of this contention, Reynolds includes in her Complaint a general list of prior lawsuits and settlements involving Daytona Beach police officers. (See id. at 3–4).

II. **Legal Standard**

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts are instructed to consider whether a pleading "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Though Federal Rule of Civil Procedure 8(a)(2) only "requires that a complaint provide 'a short and plain statement of the claim showing that the pleader is entitled to relief[,]'" a complaint containing only "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, a complaint that "provides 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' is not adequate to survive a Rule 12(b)(6) motion to dismiss." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

This standard does not—of course—force a plaintiff to provide "detailed factual allegations" to survive a motion to dismiss under Rule 12(b)(6). Twombly, 550 U.S. at 555. Rather, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (internal citations omitted). At bottom, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (internal citation omitted).

3

## III. Discussion

### A. Federal Claims

*1. Officer Clayton (Count III)*

In Count III, Reynolds asserts a federal claim against Clayton individually—a claim for false arrest in violation of the Fourth Amendment. (See Doc. 1-1 at 8–10). "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) (citing Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir. 1990)). However, an arrest made with probable cause "constitutes an absolute bar to a section 1983 action for false arrest." Id. (internal citation omitted). Probable cause to arrest exists if the "facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." Id. (internal citation omitted).

Here, Clayton arrested Reynolds for committing a domestic battery in violation of Section 741.28(2), Florida Statutes. That statutory provision defines domestic violence as any "assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member." § 741.28(2), Fla. Stat. As relevant here, the statute further defines "family or household member" as "persons related by blood or marriage [who are] . . . currently residing or have in the past resided together in the same single dwelling unit." Id. § 741.28(3). Under Florida law, a battery—as referenced in the domestic violence statute—occurs when a person: (1) "Actually and intentionally touches

4

or strikes another person against the will of the other" or (2) "[i]ntentionally causes bodily harm to another person." Id. § 784.03(1)(a).

Florida law also prescribes the method by which a law enforcement officer should investigate domestic violence incidents. The law states that when "a law enforcement officer investigates an allegation that an incident of domestic violence has occurred, the officer shall handle the incident pursuant to the arrest policy provided in [§ 901.15(7), Fla. Stat.], and as developed in accordance with subsections (3), (4), and (5)." Id. § 741.29(2). Section 901.15(7), Florida Statutes, allows "[a] law enforcement officer [to] arrest a person without a warrant when . . . [t]here is probable cause to believe that the person has committed an act of domestic violence . . . or dating violence." Id. § 901.15(7). The statute specifically notes that "[t]he decision to arrest shall not require consent of the victim or consideration of the relationship of the parties." Id.

Reynolds' Complaint does not provide sufficient factual detail to allow the Court to assess whether she stated a valid claim for false arrest. Reynolds' sparse factual allegations do not sufficiently plead an essential element of a false arrest claim—that Clayton lacked probable cause to arrest her. While Reynolds' Complaint does state several times that Clayton arrested her "without probable cause under the circumstances," (Doc. 1-1 at 6), she provides no facts to support this contention. These statements alone are—of course—just the type of "formulaic recitation of the elements of a cause of action" that the Supreme Court has said "will not do." Iqbal, 556 U.S. at 678.

Reynolds further notes that Clayton's "report falsely states the victim said the Plaintiff, 'took her shoe and smacked her on the left side of her face'" and that Clayton "used these false statements to establish probable cause as required by [Daytona's]

5

policy." (Doc. 1-1 at 5). Reynolds also asserts that Clayton "completed a false police report." (Id. at 4). Reynolds, however, fails to allege that Clayton fabricated statements to include in a police report. Merely saying that Clayton "completed a false police report" does not sufficiently allege that he fabricated evidence to arrest Reynolds without probable cause. Based on these allegations alone, the Court cannot decipher who made the false statements, whether Clayton knew they were false, or how the statements related to Reynolds' arrest. Accordingly, these allegations are not sufficient to state a claim for false arrest. See Christman v. Holmes, 448 F. App'x 869, 872 (11th Cir. 2011) (noting that the plaintiff's complaint did not state a claim because while the "complaint alleged that [the defendant officer] either knowingly or recklessly made false statements in an arrest affidavit . . . [it] did not allege any facts—such as what false statements [the officer] made, how they were material to probable cause[,] or how [the officer] knew or should have known they were false—to support [the plaintiff's] . . . formulaic recitation of the elements" (internal quotation marks and citations omitted)).

Reynolds' final few statements regarding her allegedly false arrest are a series of statements in the negative that appear to be attempts to negate probable cause. In other words, Reynolds attempts to plead the lack of probable cause by stating that Clayton knew, did not know, or failed to establish certain elements of domestic battery. Specifically, Reynolds states that: (1) Clayton "knew that [Reynolds] and her granddaughter did not reside together as required under § 741.28(3) of the Florida Statutes"; (2) Clayton "knew that [Reynolds'] granddaughter did not suffer any injuries and refused to write a statement"; and (3) Clayton "did not establish that even if

6

[Reynolds] did contact her granddaughter, whether that contact was intentional or consensual." (Doc. 1-1 at 5).

These statements are insufficient to plead a lack of probable cause for several reasons. First, the Florida domestic violence statute does not require that the related parties reside together at the time of the battery. See § 741.28(3), Fla. Stat. (defining "family or household member," as used in the domestic violence statute, as "persons related by blood . . . who are presently residing together as if a family or *who have resided together in the past as if a family*" (emphasis added)). Consequently, even if Clayton knew that Reynolds and her granddaughter did not reside together at the time of the incident, that would not prohibit him from arresting Reynolds for domestic battery. Moreover, Florida law specifically directs law enforcement officers to refrain from considering the relationship of the parties in determining whether to effect a domestic violence arrest. See id. § 901.15(7) (noting that the decision to arrest an individual for domestic violence "shall not require . . . consideration of the relationship of the parties").

Second, Reynolds' claim that her granddaughter did not suffer any injuries is not sufficient to allege that Clayton lacked probable cause to arrest Reynolds. Battery under Florida law, which is one of the crimes that can form the basis for a domestic violence arrest, does not require that a victim suffer injuries. See id. § 784.03(1)(a)(1) ("The offense of battery occurs when a person . . . [a]ctually and intentionally touches or strikes another person against the will of the other."). Additionally, that Reynolds' granddaughter refused to provide a written statement is of no moment. See id. § 901.15(7) (noting that the decision to arrest for a domestic violence crime "shall not require consent of the victim").

7

Third, merely stating that Clayton did not establish whether Reynolds' contact with her granddaughter was consensual or intentional is not a well-pleaded factual allegation. Rather, it is a conclusory statement highlighting that no facts are pleaded bearing on that element of battery. But even if Clayton did not verify whether the contact was consensual or intentional, that does not necessarily exclude the existence of probable cause. See Elmore v. Fulton Cty. Sch. Dist., 605 F. App'x 906, 911 (11th Cir. 2015) ("No officer has a duty to prove every element of a crime before making an arrest." (internal quotation marks and citation omitted)).

With the three aforementioned statements, Reynolds attempts to plead that Clayton knew that the facts could not establish certain elements of the underlying state crime. But such allegations are not sufficient to state a federal claim. See Bright v. Thomas, No. 17-12369, 2018 WL 5115420, at *4 (11th Cir. Oct. 19, 2018) ("An allegation that the defendant[] [officers] had some particular knowledge—without specific facts to support that allegation—can be conclusory and insufficient to establish a constitutional violation under § 1983.").

At bottom, Reynolds fails to allege facts showing that Clayton lacked probable cause to arrest her. Reynolds' Complaint does not contain sufficient well-pleaded facts to "permit the [C]ourt to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679. Therefore, Reynolds' Complaint as it relates to Clayton in his individual capacity has "alleged—but it has not shown—that [she] is entitled to relief." Id. (original alterations omitted). Put another way, Reynolds has not pleaded enough facts to "state a claim to relief that is plausible on its face [and has thus] . . . not nudged [her] claims across the

line from conceivable to plausible." Twombly, 550 U.S. at 570. Accordingly, Count III of Reynolds' Complaint—insofar as it relates to Clayton individually—must be dismissed.

   2.   *City of Daytona Beach (Counts III, IV, and V)*

Reynolds also asserts federal claims against Daytona in Counts III, IV, and V of her Complaint. Count III is a claim for municipal liability based on Daytona's allegedly unconstitutional policy of mandating that officers make an arrest if they develop probable cause to believe domestic violence has occurred. (See Doc. 1-1 at 8–10). Reynolds identifies false arrest as the underlying constitutional violation supporting this claim. (See id. at 8). Count IV is a claim for municipal liability based on Daytona's alleged failure to adequately train or supervise its officers. (See id. at 10–11). Count V is a claim for municipal liability based on Daytona's allegedly unconstitutional policy of holding individuals charged with domestic violence overnight without bond. (See id. at 11–12). Reynolds identifies false imprisonment as the underlying constitutional violation supporting this claim. (See id. at 11).

To impose § 1983 liability on a municipality, a plaintiff must allege: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). While Reynolds' Complaint likely fails to plead that an unconstitutional policy caused her alleged harm, the Court need not go that far because Reynolds' claims for municipal liability fail at a more basic level. As noted above, Reynolds' Complaint fails to state a claim for a constitutional

9

violation against Clayton.³ If Clayton's actions did not violate Reynolds' constitutional rights, Daytona cannot face municipal liability. See Gurrera v. Palm Beach Cty. Sheriff's Office, 657 F. App'x 886, 893 (11th Cir. 2016) ("We thus note at the outset that [the] [p]laintiff's claim against the Sheriff's Office fails because he failed to adequately allege an underlying constitutional violation."). Accordingly, Counts III, IV, and V of Reynolds' Complaint—insofar as they assert claims for municipal liability against Daytona—must be dismissed.

### B. State Claims

Reynolds also asserts two state law claims. In Count I, Reynolds alleges that Clayton subjected her to a false arrest. And in Count II, Reynolds asserts a claim for negligent infliction of emotional distress against Daytona. Each claim will be considered in turn.

*1. Officer Clayton (Count I)*

Preliminarily, the Court cannot discern whether Reynolds is attempting in Count I to assert a claim for violation of her rights under the Florida Constitution or a false arrest tort claim.⁴ The Court, however, need not determine exactly which claim Reynolds seeks to assert because neither claim is cognizable under Florida law.

---

³ As discussed above, Reynolds failed to sufficiently plead a claim for false arrest against Clayton because she did not plead facts showing that he lacked probable cause to arrest her. To the extent that Reynolds attempts to assert false imprisonment as the underlying constitutional violation for her claims against Daytona, she has likewise failed to plead that any Daytona official falsely imprisoned her. See Case v. Eslinger, 555 F.3d 1317, 1330 (11th Cir. 2009) (noting that a claim for false imprisonment, absent an allegation of misidentification, "depends on an absence of probable cause").

⁴ Reynolds' Complaint does not make clear under which theory of recovery she seeks redress. Count I of the Complaint mentions that Clayton knew or should have known he did not have the authority to arrest Reynolds under Article I, Sections 9 and 12 of the

Reynolds' Complaint possibly alleges that Clayton violated Reynolds' rights under Article I, Sections 9 and 12 of the Florida Constitution when he allegedly arrested Reynolds without probable cause. (See Doc. 1-1 at 6–7). Reynolds seeks only monetary damages as redress for this alleged harm. (See id. at 12). Such a claim is not cognizable. As Florida state and federal courts have noted, "Florida constitutional claims do not support claims for damages absent a separate enabling statute." Holcy v. Flagler Cty. Sheriff, No. 3:05-cv-1324-J-32HTS, 2007 WL 2669219, at *6 (M.D. Fla. Sept. 6, 2007) (citing Garcia v. Reyes, 697 So. 2d 549 (Fla. 4th DCA 1997)); see also Youngblood v. Fla. Dep't of Health, 224 F. App'x 909, 913 n.4 (11th Cir. 2007) (noting that the district court properly dismissed the plaintiffs' claims under the Florida Constitution "to the extent they sought monetary damages because [the] [p]laintiffs cited no authority—similar to 42 U.S.C. § 1983 in the federal context—creating a civil cause of action for monetary relief under the Florida Constitution" (internal citation omitted)); Corbett v. Transp. Sec. Admin., 968 F. Supp. 2d 1171, 1191 (S.D. Fla. 2012) ("In Florida, no cause of action exists for money damages for a violation of a state constitutional right." (internal quotation marks and citation omitted)). Therefore, Reynolds cannot state a claim under the Florida Constitution.

Alternatively, Count I possibly alleges that Clayton committed the tort of false arrest by arresting Reynolds without probable cause. Under Florida law, false arrest is "defined as the unlawful restraint of a person against that person's will." Willingham v. City of Orlando, 929 So. 2d 43, 48 (Fla. 5th DCA 2006) (citing Johnson v. Weiner, 19 So. 2d 699 (Fla. 1944)). Police officers, however, may not be held liable for state tort claims unless

---

Florida Constitution. (See Doc. 1-1 at 6). Count I, however, is styled as a claim for false arrest. (See id.).

they acted with a certain state of mind. Section 768.28(9)(a), Florida Statutes, provides that:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

§ 768.28(9)(a), Fla. Stat. Florida courts have "equate[d] bad faith [as used in the aforementioned statute] with the actual malice standard." Gurrera, 657 F. App'x at 892.

Preliminarily, Clayton concedes that he acted within the scope of his employment when he arrested Reynolds for domestic battery. (See Doc. 4 at 8). However, Reynolds fails to plead any facts that indicate Clayton in any way acted in bad faith, with malicious purpose, or with a wanton and willful disregard for human rights, safety, or property. Indeed, Reynolds does not allege even in a conclusory manner that Clayton acted with an impermissible purpose. Presumably, Reynolds intends to allege bad faith by relying on her assertion that Clayton included false information in his police report. But as mentioned above, Reynolds provides no details regarding the origin of the allegedly false information, how it relates to Reynolds' arrest, or whether Clayton knew it was false. Reynolds' Complaint is completely devoid of any facts alleging that Clayton acted with the actual malice necessary to overcome the statutory immunity Clayton otherwise enjoys. Section 768.28(9)(a), Florida Statutes, thus bars Reynolds' state law false arrest claim against Clayton.[5] Count I of Reynolds' Complaint must therefore be dismissed.

---

[5] Clayton also likely enjoys immunity on Reynolds' false arrest claim pursuant to Section 741.29, Florida Statutes, which provides that "[n]o law enforcement officer shall be

### 2. City of Daytona Beach (Count II)

Reynolds' final claim is for negligent infliction of emotional distress. In Count II, Reynolds alleges that Daytona negligently inflicted "harmful physical impact and severe emotional distress upon [her]." (Doc. 1-1 at 8). Under Florida law, a plaintiff can state a claim for negligent infliction of emotional distress by pleading facts supporting the following: (1) that the plaintiff suffered a physical injury; (2) that the plaintiff's physical injury was caused by [some relevant] psychological trauma; (3) that the plaintiff was "involved in some way in the event causing the negligent injury to another"; and (4) that the plaintiff had "a close personal relationship to the directly injured person." Zell v. Meek, 665 So. 2d 1048, 1054 (Fla. 1995).

In a claim for negligent infliction of emotional distress, Florida law follows the impact rule, which states that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." R.W. v. Armor Corr. Health Servs., Inc., 830 F. Supp. 2d 1295, 1303 (M.D. Fla. 2011) (quoting Southern Baptist Hosp. of Fla. v. Welker, 908 So. 2d 317, 320 (Fla. 2005)). Florida's impact rule provides two bases for recovery in cases of negligent infliction of emotional distress: (1) an individual may recover if he "experiences a physical impact during the [relevant] incident and suffers emotional distress stemming from that incident" or (2) an individual may recover if he "does not experience a physical impact but is involved in the incident and

---

held liable, in any civil action, for an arrest based on probable cause . . . arising from an alleged incident of domestic violence brought by any party to the incident." § 741.29(5), Fla. Stat. As detailed above, Reynolds does not plead sufficient facts to show that Clayton arrested her without probable cause. However, the Court declines to rule on this domestic-violence-specific immunity because Reynolds failed to plead facts sufficient to overcome the general tort-immunity provided to law enforcement officers under Florida law.

13

experiences emotional distress so severe that it manifests as physical injury." Seybold v. Clapis, 966 F. Supp. 2d 1312, 1315 (M.D. Fla. 2013).

Preliminarily, Reynolds asserts that this case falls within the narrow exception to the impact rule set forth by the Florida Supreme Court. That exception is only applied "in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale of applying the rule." Willis v. Gami Golden Glades, LLC, 967 So. 2d 846, 854 (Fla. 2007) (internal quotation marks and citations omitted). Plainly, this is not such a case.

Here, Reynolds cannot satisfy the impact rule because she failed to plead facts showing that she suffered any physical or emotional impact whatsoever. The sole line in her Complaint addressing this issue states that Reynolds "was injured suffered damages [sic], including severe physical pain and suffering, severe mental anguish and emotional distress, economic damages, loss of sense of self efficacy, and loss of capacity to enjoy life." (Doc. 1-1 at 8). These are not facts. Rather, this assertion is a textbook example of a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, [which] do[es] not suffice." Iqbal, 556 U.S. at 678 (internal citation omitted). Reynolds has thus failed to state a claim for negligent infliction of emotional distress. Count II of Reynolds' Complaint must therefore be dismissed.

**IV. Conclusion**

Based on the foregoing, it is **ORDERED** as follows:

1. The Motion to Dismiss (Doc. 4) filed by Daytona and Clayton is **GRANTED**.

2. All counts of the Complaint (Doc. 1-1) are **DISMISSED WITHOUT PREJUDICE**. Reynolds may file an amended complaint on or before **February 20, 2019**.

**DONE** and **ORDERED** in Orlando, Florida, on February 6, 2019.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties