# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

HATTIE MAE REYNOLDS,

            **Plaintiff,**

**v.**                                                   **Case No:  6:18-cv-1921-Orl-28LRH**

CITY OF DAYTONA BEACH and
AUSTIN CLAYTON,

            **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

       This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS, CITY OF DAYTONA BEACH AND AUSTIN CLAYTON'S, MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6), FEDERAL RULES OF CIVIL PROCEDURE, THE DEFENSE OF QUALIFIED IMMUNITY, AND STATE LAW IMMUNITY UNDER § 768.28(9), FLA. STAT. (Doc. No. 21)** |
| **FILED:** | **March 13, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND.

       Plaintiff Hattie Mae Reynolds ("Reynolds") filed a complaint in state court against Defendants Daytona Beach Police Officer Austin Clayton ("Officer Clayton") and the City of Daytona Beach ("the City"), (collectively "Defendants"), following her arrest in May 2018 by

Officer Clayton.   Doc. No. 1-1.   Defendants removed the case to this Court on November 8, 2018, pursuant to 28 U.S.C. §§ 1441, 1443, and 1446.   Doc. No. 1.

On November 16, 2018, Defendants moved to dismiss the complaint.   Doc. No. 4.   The Court granted that motion, finding that Reynolds's complaint failed to state a claim, and permitted Reynolds leave to amend.   Doc. No. 15.   *See Reynolds v. City of Daytona Beach*, No. 6:18-cv-1921-Orl-28KRS,  2019 WL 463435,  at *3 (M.D. Fla. Feb. 6, 2019).

On February 20, 2019, Reynolds filed an amended complaint,  asserting the same causes of action as the initial  complaint:  (1) Count I – false arrest under the Florida  constitution  and Florida tort law against Officer Clayton; (2) Count II – negligent  infliction  of emotional  distress ("NIED") against the City; (3) Count III – false arrest in violation  of 42 U.S.C. § 1983 against both Officer Clayton and the City; (4) Count IV – municipal  liability  under 42 U.S.C. § 1983 against the City; and (5) Count V – false imprisonment  under 42 U.S.C. § 1983 against the City.   Doc. No. 17. Included  with the amended  complaint  are: (1) a copy of a News Release by the Daytona Beach Police Department regarding  Reynolds's  arrest; and (2) the charging  affidavit  associated  with Reynolds's arrest.   Doc. No. 17-1.

On March 13, 2019, Defendants moved to dismiss  the amended  complaint.   Doc. No. 21. Reynolds has filed a response in opposition.   Doc. No. 22.   The motion  was referred  to the undersigned  for issuance of a Report and Recommendation,  and the matter is ripe for review.

## II.   LEGAL STANDARD.

Defendants move to dismiss  the amended  complaint  pursuant to Federal  Rule of Civil Procedure 12(b)(6).   Doc. No. 21.   "To survive a motion  to dismiss,  a [pleading]  must contain sufficient  factual matter, accepted as true, to 'state a claim to relief that is plausible  on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).   While this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).   A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555. Although a court must accept as true well-pled allegations, it is not bound to accept a legal conclusion couched as a factual allegation.   *Iqbal*, 556 U.S. at 678.   For purposes of this analysis, exhibits attached to the amended complaint are part of the pleading for "all purposes."   Fed. R. Civ. P. 10(c); *see also Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("[D]ocuments attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6).").

## III.   ALLEGATIONS OF THE AMENDED COMPLAINT.[1]

Reynolds alleges that the City maintains a policy under its Departmental Standards Directive whereby law enforcement officers are instructed to make an arrest during an investigation of a domestic dispute.   Doc. No. 17 ¶ 66.   Officers are to determine what crime occurred; if the relationship is domestic; and the primary aggressor.   *Id.*   If the officer determines that there is probable cause, the officer shall effect an arrest of the primary aggressor without a warrant.   *Id.* With this policy, Reynolds alleges that the City permitted, encouraged, tolerated, and ratified a pattern and practice of permitting officers to engage in misconduct and to make arrests without probable cause.   *Id.* ¶ 67.

Officer Clayton is a law enforcement officer with the City of Daytona Beach.   *Id.* ¶ 14. Reynolds is a 95-year-old African American female who resides in Daytona Beach.   *Id.* ¶¶ 5, 15.

---

[1]   At the motion to dismiss stage, courts must assume "that all the [factual] allegations in the complaint are true (even if doubtful in fact)."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

On May 5, 2018, Officer Clayton responded to an initial call made by Reynolds seeking assistance in removing her 46-year-old granddaughter from her home. *Id.* ¶ 17.[2]   Reynolds had advised the operator that her granddaughter was "sassing her" and refused to comply with Reynolds's demands that she leave the home. *Id.* ¶ 18.   Reynolds made a subsequent call requesting help removing the granddaughter from the home because the granddaughter refused to get out of Reynolds's bed. *Id.* ¶ 19.   When Officer Clayton arrived on the scene, he did not observe Reynolds and her granddaughter in a physical altercation. *Id.* ¶ 20.   Reynolds advised Officer Clayton that the granddaughter did not reside at the home. *Id.* ¶ 21.

Officer Clayton interviewed Reynolds, who denied any physical touching between herself and the granddaughter. *Id.* ¶ 22.   Officer Clayton thereafter interviewed the granddaughter, who initially did not mention that any physical touching had occurred between herself and Reynolds. *Id.* ¶ 23.   Officer Clayton knew that he must determine a primary aggressor in compliance with the City's policy; therefore, Officer Clayton proceeded to coax the granddaughter to say that Reynolds had physically accosted her—Officer Clayton repeatedly asked her if there was any physical altercation, to which the granddaughter finally responded that Reynolds "threw a bedroom slipper." *Id.* ¶ 24.   Officer Clayton then asked her if she was "hit or smacked by [Reynolds] today." *Id.* ¶ 25.   The granddaughter then responded that Reynolds "took the bedroom slipper off of [the granddaughter's] foot and slapped her with it." *Id.*[3]   After hesitation, the granddaughter stated that Reynolds struck her "on the left side of [her] face." *Id.*   Officer Clayton observed that the

---

[2] According to the amended complaint, Officer Clayton arrived at the scene with another officer, Officer Goble.  Doc. No. 17 ¶ 20.

[3] The arrest affidavit, which Reynolds filed as an exhibit to the amended complaint, states: "V1 advised that D1 then took off *her* shoe and smacked her on the left side of her face."  Doc. No. 17-1, at 3 (emphasis added).   Thus, although Reynolds alleges in the amended complaint that Officer Clayton stated that Reynolds removed the slipper from the granddaughter's foot, it is actually unclear from the arrest report from whose foot she removed the slipper.

granddaughter had no physical injury to her face.   *Id.* ¶ 27; *see also* Doc. No. 17-1, at 3 ("V1 had no marks or bruising on her face where D1 smacked her with the shoe.").   Officer Clayton confirmed that the granddaughter had never resided with Reynolds.   Doc. No. 17 ¶ 28.

Reynolds was arrested on the date of the incident after Officer Clayton determined that she was the primary aggressor.   *Id.* ¶¶ 40, 41.   She was released on May 6, 2019.   *Id.* ¶ 40.   A *nolle prosequi* was filed on May 10, 2018.   *Id.* ¶ 43.   The charges remain public record, and Reynolds has no prior criminal history.   *Id.* ¶ 44.   After her arrest, Reynolds was the subject of media publications, which were reported on the radio, in the newspaper, and on television; her mugshot and/or her name are also available on the internet and through other media sources throughout the United States.   *Id.* ¶ 39.

Reynolds alleges that Officer Clayton knew or should have known that the granddaughter was being untruthful because of her hesitation and because she gave Officer Clayton three different versions of the story.   *Id.* ¶¶ 26, 29.   Moreover, Officer Clayton observed no physical injury to the granddaughter's face.   *Id.* ¶ 27.   In addition, Reynolds had repeatedly told Officer Clayton that her granddaughter was being untruthful about any physical touching.   *Id.* ¶ 30.   Likewise, Officer Clayton knew that Reynolds was "old and frail, and therefore, unlikely able to take a shoe from [the granddaughter's] foot who is much younger and mobile."   *Id.* ¶ 31.   Officer Clayton observed that Reynolds was barely able to ambulate.   *Id.*   Officer Clayton also knew that the granddaughter did not reside with Reynolds and had never resided with her in the past.   *Id.* ¶¶ 21, 28, 36.   Although Officer Clayton knew or should have known that the granddaughter was being untruthful because she was hesitant and kept changing her story, Reynolds alleges that the City's policy required him to arrest someone irrespective of whether probable cause was present.   *Id.* ¶ 26.

Reynolds alleges that in Officer Clayton's police report, he intentionally fabricated and wrote the false statement that "D1 took her shoe and smacked her on the left side of her face," and falsely wrote that Reynolds said, "she began to start yelling and smacked V1 in the face with the shoes she had on." *Id.* ¶ 33–34. She claims that Officer Clayton lacked probable cause to arrest her, and that Reynolds was falsely charged with the crime of domestic battery. *Id.* ¶¶ 48, 84. She asserts that Officer Clayton unreasonably relied on the City's training and policy regarding response to domestic violence calls, which required him to arrest an individual without discretion. *Id.* ¶ 15.

Reynolds alleges that as a result of the incident, she has suffered extensive mental anxiety, physical and emotional distress, and she had to undergo three blood transfusions on May 14, 2018. *Id.* ¶ 45. She also claims that she suffered "shock, fright, apprehension, embarrassment, and humiliation, and loss of liberty and freedom." *Id.* ¶ 52. In addition, she alleges that she suffered "dizziness, headaches, numbness and tingling and visual disturbance, and anemia immediately following the arrest and incarceration." *Id.* ¶ 59.

In addition to the City's policy concerning domestic violence arrests, Reynolds claims that the City has established a permanent and well settled practice and custom of permitting officers like Officer Clayton to fabricate arrest reports. *Id.* ¶ 14. Reynolds further claims that the City permitted, encouraged, tolerated, and ratified a pattern or practice of intentionally fabricating statements and allowing officers to make arrests without probable cause by failing to properly train and supervise officers and failing to discipline officers for executing police reports containing false statements. *Id.* ¶ 13. To support these allegations, Reynolds cites to other civil rights complaints for false arrests that were asserted against the City and were allegedly successful, and asserts that other law enforcement officers currently employed by the City have numerous complaints against them for failure to truthfully and accurately complete affidavits or citations. *Id.* ¶ 14.

## IV.    DISCUSSION.

### A.    Federal Claims.

#### 1.    Count III – False Arrest Pursuant to § 1983 – Officer Clayton.

In Count III of the amended complaint, Reynolds asserts a claim of false arrest in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 against both Officer Clayton and the City. Doc. No. 17, at 11.   I first address Reynolds's allegations against Officer Clayton individually.

Defendants seek dismissal of Reynolds's claim in Count III against Officer Clayton based on the defense of qualified immunity.   Doc. No. 21, at 9–15.   Defendants submit that the amended complaint lacks factual allegations demonstrating that at any point, Officer Clayton falsified his report or lacked probable cause or even arguable probable cause to arrest Reynolds pursuant to Florida's domestic violence statute, Fla. Stat. § 741.28.   *Id.*

"Qualified immunity provides protection for government officials performing discretionary functions and sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Brannon v. Finkelstein*, 754 F.3d 1269, 1278 (11th Cir. 2014) (quoting *Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003)).   There is no dispute that Officer Clayton was performing discretionary functions when he interacted with Reynolds.   *See* Doc. No. 21, at 12, n.4. *See also Bercini v. City of Orlando*, No. 6:15-cv-1921-Orl-41TBS, 2016 WL 11448994, at *3 (M.D. Fla. Sept. 30, 2016) ("[A]n officer making an arrest is acting within his discretionary duty." (citing *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004))).   Accordingly, in order to ascertain whether the qualified immunity defense applies to this case, the Court must determine: "(1) whether the facts alleged make out a violation of a constitutional right; and (2) whether that right was 'clearly established' at the time of the alleged misconduct."   *Bratt v. Genovese*, No. 8:13-cv-3210-T-

36AEP, 2015 WL 12835684, at *3 (M.D. Fla. Nov. 23, 2015), *aff'd*, 660 F. App'x 837 (11th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Turning to the clearly-established prong first,[4] the law is clear that "[a] warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990)); *see also Medley v. City of Orlando*, No. 6:08-cv-1456-Orl-18DAB, 2009 WL 10706233, at *6 (M.D. Fla. Jan. 12, 2009) (citation omitted) ("[I]t is clearly-established that an arrest made without probable cause violates the Fourth Amendment."). The same standard for determining whether probable cause exists applies under both Florida and federal law—"whether 'a reasonable man would have believed [probable cause existed] had he known all of the facts known by the officer.'" *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998) (quoting *United States v. Ullrich*, 580 F.2d 765, 769 (5th Cir. 1978)). Probable cause exists "when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *DeGraw v. Coats*, No. 8:11-cv-720-EAK-MAP, 2011 WL 2270398, at *3 (M.D. Fla. June 6, 2011).

In addition to the probable cause standard, the Defendants also point to the lesser "arguable probable cause" theory, which requires a determination as to "whether 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest." *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)). However, the law is again clearly established that the absence of arguable probable cause also violates the Fourth Amendment.

---

[4] "[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

*See id.* at 1143 "([A]n arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures."). Moreover, the law is equally clear that law enforcement officers "are not entitled to qualified immunity if they fabricated or unreasonably disregarded certain pieces of evidence to establish probable cause or arguable probable cause . . . ." *Gurrera v. Palm Beach Cty. Sheriff's Office*, 657 F. App'x 886, 889–90 (11th Cir. 2016) (citation and quotation marks omitted).[5] Whether probable cause or arguable probable cause exists depends on the elements of the alleged offense and the particular facts of the case. *Davis v. City of Apopka*, 356 F. Supp. 3d 1366, 1377 (M.D. Fla. 2018) (quoting *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010)).

Based on the elements of the alleged offense and the particular facts alleged in the amended complaint, all of which must be accepted as true, I find that Reynolds has sufficiently alleged both that Officer Clayton did not have probable cause or arguable probable cause to arrest her and that Officer Clayton inserted fabrications in his arrest report such that Defendants' motion to dismiss should be denied as to this claim.

Officer Clayton reported that Reynolds engaged in domestic violence under Florida law, specifically Fla. Stat. § 741.28, which provides:

> (2) "Domestic violence" means any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member.

> (3) "Family or household member" means spouses, former spouses, persons related by blood or marriage, persons who are presently residing together as if a family or who have resided together in the past as if a family, and persons who are parents of a child in common regardless of whether they have been married. With the exception of persons who have a child in common, the family or household members

---

[5] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36-2.

must be currently residing or have in the past resided together in the same single dwelling unit.

Fla. Stat. § 741.28(2)–(3).  *See also* Doc. No. 17, ¶¶ 15-16, 36, 49-50.   However, the arresting affidavit states that Reynolds was charged with misdemeanor battery, Doc. No. 17-1, at 3, which occurs when a person "[a]ctually and intentionally touches or strikes another person against the will of the other"; or "[i]ntentionally causes bodily harm to another."   Fla. Stat. § 784.03(1)(a).

At the outset, I note that in the amended complaint, Reynolds alleges that Officer Clayton knew that the granddaughter did not reside with Reynolds, and that the granddaughter had never resided with Reynolds in the past.   Doc. No. 17 ¶¶ 21, 28.   These allegations are sufficient to state a claim that Officer Clayton lacked probable cause to arrest Reynolds under Fla. Stat. § 741.28 because that law requires that the altercation occur between family or household members, as defined in the statute.  Fla. Stat. § 741.28(3).   In addition, the statute requires a physical injury, Fla. Stat. § 741.28(2), and the amended complaint alleges that the granddaughter suffered no physical injury, Doc. No. 17 ¶ 27.

However, the arrest affidavit cites to the general misdemeanor battery statute, Fla. Stat. § 780.03, and therefore a reliable allegation that Reynolds struck her granddaughter with a slipper would be sufficient to state a claim for battery, which could have provided Officer Clayton with probable cause.[6]  *See* Fla. Stat. § 780.03(1)(a) ("The offense of battery occurs when a person . . . [a]ctually and intentionally touches or strikes another person against the will of the other."). Nonetheless, Reynolds asserts, with sufficient supportive factual allegations, that the

---

[6] Reynolds and Defendants both state that Reynolds was arrested for domestic battery, citing Fla. Stat. § 741.28(3).  Section 741.28 only provides the definition for domestic violence.   However, the arrest affidavit, which is attached to the complaint, states that Reynolds was arrested for battery in violation of Fla. Stat. § 780.03(1)(a).

granddaughter's statements were false, Officer Clayton knew the statements were false, and Officer Clayton coaxed the granddaughter to state that Reynolds physically struck her.

More specifically, in the amended complaint, Reynolds adds numerous detailed allegations that Officer Clayton fabricated his police report because: (1) when the officers arrived at the scene, they did not observe any physical altercation between Reynolds and her granddaughter; (2) Reynolds advised Officer Clayton that the granddaughter did not reside at Reynolds's home and had never resided with Reynolds in the past; (3) Reynolds told Officer Clayton that no physical touching had occurred; (4) the granddaughter did not mention any physical touching during her initial interview with Officer Clayton; (5) based on the City's policy of requiring officers to determine a primary aggressor, Officer Clayton coaxed the granddaughter to confirm that Reynolds physically touched her, and after repeatedly asking the granddaughter if there was a physical altercation the granddaughter finally confirmed that Reynolds "threw a bedroom slipper"; (6) the granddaughter thereafter changed her story and stated that Plaintiff "took the bedroom slipper off of [the granddaughter's] foot and slapped her with it"; (7) Officer Clayton knew or should have known that the granddaughter was being untruthful because she "kept changing her story and hesitated to identify where she was allegedly struck at"; (8) Officer Clayton observed no physical injury to the granddaughter's face; (9) Reynolds repeatedly told Officer Clayton that the granddaughter was being untruthful about any physical touching; and (10) Officer Clayton knew that Reynolds was old and frail, and unlikely to be able to take a shoe from her granddaughter's foot, who was much younger and mobile.   Doc. No. 17 ¶¶ 15–31.

Taking Reynolds's allegations as true, I recommend that the Court find that she has set forth sufficient allegations to survive Defendants' motion to dismiss her claim in Count III against Officer

Clayton.[7]  If Officer Clayton indeed coaxed the granddaughter to state that Reynolds struck her with a shoe, or if Officer Clayton knew that the granddaughter's story was false because she was: (1) hesitant with her responses, (2) initially did not state that any physical contact occurred, and (3) provided three different versions of the story, it could be concluded that Officer Clayton lacked both probable cause and arguable probable cause to effect Reynolds's arrest.  *See, e.g.*, *Valderrama v. Rousseau*, No. 11-CIV-24637, 2012 WL 12925174, at *5 (S.D. Fla. Sept. 18, 2012) ("Plaintiff alleges that Defendants did not have even arguable probable cause because there was absolutely no reason for his arrest.  The reason contained within the arrest affidavits and police reports was a complete fabrication, since he did not have any drugs on his person and the documents contained numerous inherent inconsistencies.   Thus, taking Plaintiff's claims as true, the false arrest claims cannot be dismissed.");  *see also Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999) (stating that the law is clearly established that "the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen"; therefore, "qualified immunity will not shield [an officer] from liability for such false statements, if such false statements were necessary to the probable cause"); *Paul v. Bradshaw*, No. 12-81381-CIV, 2013 WL 12084298, at *4 (S.D. Fla. Aug. 7, 2013) ("An officer's good-faith mistake may indicate arguable probable cause, but 'factual issues as to [the officer's] honesty and credibility' do not." (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1233 (11th Cir. 2004)); *Bouche v. City of Mount Vernon*, No. 11 CIV. 5246 SAS, 2012 WL 987592, at *6 (S.D.N.Y. Mar. 23, 2012) ("[I]f a defendant knows that witness statements are false or coerced, this will defeat

---

[7]  Simply put, the question of whether or not Officer Clayton possessed probable cause to arrest Reynolds, or falsified his police report, will hinge on evidence obtained during discovery, as well as the credibility of Officer Clayton's testimony when compared with the credibility of the testimony of Reynolds, her granddaughter, and any other witnesses (such as Officer Goble).   Thus, these determinations can only be made after discovery, either on undisputed facts at summary judgment or by the trier of fact at trial.

probable cause."). And, as discussed above, the law is clearly established that an arrest without probable cause and/or the falsification of police reports constitute violations of Fourth Amendment rights.

Accordingly, I recommend that the Court deny Defendants' motion to dismiss as it relates to Reynolds's claim against Officer Clayton in Count III. Officer Clayton will not be "precluded from reasserting this defense at the close of discovery, if warranted." *See Perez v. Harrelson*, No. 6:15-cv-879-Orl-37GJK, 2016 WL 866590, at *8 (M.D. Fla. Mar. 7, 2016).

### 2. *Count III – False Arrest Pursuant to § 1983 – the City.*

The remainder of Reynolds's federal claims are against the City, and thus subject to the limitations of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Under *Monell*, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In Count III, Reynolds alleges a claim of false arrest against the City pursuant to § 1983. Thus, Reynolds "must ultimately prove that [the City] had a policy, custom, or practice that caused the deprivation." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

> A "policy" includes decisions of [the municipality's] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. A "custom" includes a practice that has not been formally approved by an appropriate decisionmaker but that may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Greer v. Ivey*, No. 6:15-cv-677-Orl-41GJK, 2016 WL 11464648, at *4 (M.D. Fla. July 18, 2016) (quotation marks and citations omitted). A municipality will rarely have an officially adopted

policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation.   *See Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003).   Moreover, "[t]he official policy or custom 'must be the moving force of the constitutional violation in order to establish liability of a government body under § 1983.'"   *Skyles v. McCoy*, No. 6:16-cv-1968-Orl-37TBS, 2017 WL 1322071, at *5 (M.D. Fla. Apr. 7, 2017) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981)).

In the order dismissing Reynolds's initial complaint, the Court found that because Reynolds had not sufficiently alleged an underlying constitutional violation as to Officer Clayton, she had failed to state a claim against the City in Counts III, IV, and V of the complaint.   Doc. No. 15, at 9–10.   Here, even assuming the Court agrees that Reynolds has sufficiently alleged such underlying constitutional violation in the amended complaint, I recommend that the Court grant the motion to dismiss Count III against the City.

In Count III, although Reynolds at times makes generic reference to arrests without probable cause, or to false arrests as a whole, Reynolds clearly limits her allegations of a custom, policy, or practice to the purported arrest of persons without probable cause in *domestic violence situations*. Specifically, Reynolds makes the following allegations in Count III:

- CITY's policy requiring its sworn law enforcement officers to arrest a citizen regardless of probable cause when responding to domestic calls caused the underlying violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution.   (Doc. No. 17 ¶ 65);

- At all times material hereto, under CITY's Departmental Standards Directive, officers are instructed that when they are investigating domestic disputes to make an arrest pursuant to § 901.15(7) of the Florida Statute; 626.7 upon entry or contact with the involved parties the officer shall determine the primary aggressor; 626.8 Officers will investigate allegations of domestic violence of dating violence and attempts to establish probable cause by

adhering to the following:   determine what crime occurred, determine if the relationship is domestic or dating; determine the primary aggressor; 626.10 The policy of the Daytona Beach Police Department is to arrest violators of domestic violence statutes when probable cause exists to affect the arrest; 626.11 An officer shall arrest upon probable cause, without a warrant, when investigation determines that an act of domestic violence or child abuse has occurred, as defined by F.S.S. 741.28 or 927.03.   This directive requires that an arrest be made when an officer responds to domestic disputes, is ambiguous, misleading and in direct conflict with precedent set forth by the Supreme Court of the United States and the Florida District courts of Appeals.   (*Id.* ¶ 66).

- CITY was deliberately indifferent as to its policy allowing its officer, including Defendant CLAYTON, to deprive citizens of their constitutional rights by requiring an arrest for all domestic calls outside of circumstances where probable cause for such an arrest as prescribed by the Fourth Amendment is present.   (*Id.* ¶ 68).

Upon a review of the entire amended complaint, it is clear that Reynolds has not included sufficient factual allegations to state a claim that the City employed a policy, custom, or practice that caused the deprivation of her constitutional rights.   Reynolds has not identified any official policy that expressly directs officers to arrest persons without probable cause in domestic violence situations.   Rather, all of Reynold's allegations are broad and conclusory in nature.   *See, e.g.*, *Gurrera,* 657 F. App'x at 893 (finding that conclusory allegations that there was a "pattern . . . of obtaining coerced and false statements," and "a pattern and practice of engaging in false arrests, imprisonment, [and] false prosecution" failed to state a claim under *Monell*); *Skyles*, 2017 WL 1322071, at *5 ("Plaintiff has made wholly conclusory statements that the City "fail[ed] to promulgate reasonable policies and procedures among [its] officers for the use of force," and that such failure "was excessive and unreasonable, was done intentionally, willfully, [and] maliciously.").[8]

---

[8] While not cited to in the amended complaint itself, I note that Reynolds attached as an exhibit a copy of a News Release by the Daytona Beach Police Department regarding Reynolds's arrest (Doc. No. 17-1).   This document does not sufficiently create a cause of action as it again only references Reynold's own

Other than her own arrest, Reynolds has not made a single allegation that any other officer employed by the City has arrested a person *in response to a domestic violence call*, and that such arrest(s) lacked probable cause or arguable probable cause. Reynolds cites to four civil lawsuits (*see* Doc. No. 17 ¶¶ 14b-e), three of which were filed in this Court and involved claims of false arrests without probable cause. However, none of these cases involved the City's purported custom, policy, or practice with respect to arrests in response to domestic violence calls. *See Johnson v. City of Daytona Beach*, No. 6:16-cv-941-Orl-40TBS, 2017 WL 119744 (M.D. Fla. Jan. 12, 2017); *Olson v. Dier et al.*, No. 6:10-cv-1771-Orl-28TBS (M.D. Fla. Nov. 29, 2010); *Ingram et al. v. City of Daytona Beach*, No. 6:03-cv-1189-Orl-18KRS (M.D. Fla. Aug. 19, 2003). Reynolds' references to two other officers—Brian Biddix and Dawn Marie Harris—suffer from the same defect. The amended complaint does not allege that either officer engaged in fabricating police reports with respect to domestic violence arrests.[9] As such, Reynolds has failed to allege "a widespread policy of the relevant constitutional violations and that the prior conduct is sufficiently similar." *Guarda v. City of Melbourne, Fla.*, No. 6:17-cv-756-Orl-37TBS, 2017 WL 3034071, at *3 (M.D. Fla. July 18, 2017); *see also Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1329–30 (11th Cir. 2015) (affirming dismissal of custom, policy, and practice claim where the only facts alleged in support of the claim were about the individual defendant officers' own conduct along with conclusory allegations of a practice of covering up excessive force against the mentally ill); *Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011) (plaintiff failed to establish an

---

arrest and is not an admission of any unconstitutional policy or widespread custom or practice.

[9] The allegations relating to Officer Biddix simply refer to a "crime scene report" and to an "arrest affidavit involving use of force." The allegations relating to Officer Harris relate to a traffic citation and to a traffic crash report. *See* Doc. No. 17 ¶¶ 14f–g.

unconstitutional custom or policy sufficient to impose municipal liability when he relied only on his own experience).

Accordingly, I recommend that the Court grant Defendants' motion to dismiss Count III against the City.

> 3. *Count IV – Inadequate Training and Supervision under § 1983 – the City.*

In Count IV, Reynolds alleges that the City "was deliberately indifferent as to the level of training, supervision, and discipline maintained to its officers, including [Officer Clayton], as evidenced by its policies and customs . . . ." Doc. No. 17 ¶ 78. Reynolds has also limited this claim to the City's policies concerning domestic violence arrests and preparation of purportedly false police reports for domestic violence arrests. *See id.* ¶¶ 13, 14, 66, 79.

"In limited circumstances, a municipality's failure to train its employees may rise to the level of an official government policy for purposes of § 1983." *Guarda*, 2017 WL 3034071, at *2 (citations omitted). The failure to train "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "Deliberate indifference is a stringent standard." *Id.* (quoting *Connick*, 563 U.S. at 61); *see also Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994) ("Only if, 'in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,' can a municipality reasonably 'be said to have been deliberately indifferent to that need.'" (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989))). "Ultimately . . . a municipality cannot be held liable under § 1983 for conduct of which its officials were unaware; instead, the plaintiff must show that municipal officials had actual or constructive knowledge of the

misconduct, but that they failed to take corrective action." *Johnson*, 2017 WL 119744, at *5 (citing *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986)).

In Count IV, Reynolds again cites to the other cases against law enforcement officers employed by the City—none of which involved domestic violence calls and arrests—and to her allegations regarding the City's Departmental Standards Directive.  Doc. No. 17 ¶ 78.  However, she does not elaborate on how the City failed to implement any certain training policy, or how the City's failure to train law enforcement resulted in a related unconstitutional policy application in her case or in any other cases of domestic violence calls and arrests.  Reynolds also has failed to provide any factual allegations demonstrating that the City had actual or constructive knowledge that police officers were arresting persons in response to domestic violence calls without probable cause.  Thus, Count IV is insufficiently pled to survive a motion to dismiss.  *See, e.g.*, *Guarda*, 2017 WL 3034071, at *3 ("[T]he Complaint does not identify a particular omission in the City's training program.  Rather, Plaintiff points to the City's policies and training generally.  In addition, Plaintiff relies on imprecise and conclusory allegations . . . which do not approach the requisite pleading of a pattern of similar constitutional violations."); *cf. Johnson*, 2017 WL 119744, at *5 (finding citation to twenty-four instances of founded misconduct by defendant law enforcement officers, of which the City had actual knowledge, was a sufficient allegation of deliberate indifference).

Therefore, I recommend that the Court find that Reynolds has not sufficiently stated a failure to train claim against the City, and that Count IV of the amended complaint is due to be dismissed.

4.     *Count V – False Imprisonment under § 1983 – the City.*

In Count V, Reynolds alleges that after Officer Clayton falsely charged her with domestic battery, the City's policy required that she be held in custody overnight without bond.  Doc. No. 17

¶¶ 84, 86.   She claims that as a result, she suffered "physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation, and loss of liberty and freedom."   *Id.* ¶ 86.   She also asserts that she is subject to the future threat of law enforcement arresting her without probable cause and incarcerating her anytime someone in her residence calls 911 and intimates that she physically touched them, irrespective of whether probable cause exists.   *Id.* ¶ 87.

To the extent Reynolds is alleging that her overnight detention was the product of a custom, policy, or practice related to the arrest of persons in response to domestic violence calls, this claim suffers from the same fatal flaws discussed above.   To the extent Reynolds is alleging that her overnight detention was the product of some other custom, policy, or practice, not only has she failed to include sufficient factual allegations in the amended complaint, she has not identified *any* custom, policy, or practice that could be tied to the alleged violation of her constitutional rights. *See Monell*, 436 U.S. at 691.[10]   And, as previously stated, Reynolds has not included sufficient factual allegations in her complaint demonstrating that the City engaged in a policy or custom of unconstitutional conduct pursuant to the Departmental Standards Directive or otherwise that led to her arrest.   Therefore, I recommend that the Court grant the motion to dismiss Count V of the complaint.

B.   State Law Claims.

1.   *Count I – False Arrest – Officer Clayton.*

In Count I of the amended complaint, Reynolds asserts a false arrest claim against Officer Clayton.   Doc. No. 17, at 9.   In the order dismissing Reynolds's initial complaint, the Court noted

---

[10]   Reynolds merely and broadly alleges that Officer Clayton falsely charged her with the crime of domestic battery, and that "CITY's policy required that [Reynolds] received no bond and be held in custody overnight in violation of [her] protection under the Fourth and Fourteenth Amendment against deprivations of liberty without due process."   Doc. No. 17 ¶ 84.

that it was unclear whether Reynolds was attempting to assert this claim under the Florida Constitution or as a Florida false arrest tort claim.   Doc. No. 15, at 10.   Reynolds's amended complaint suffers from the same deficiency.   Count I is styled as a "false arrest" claim, but Reynolds alleges that Officer Clayton did not have authority to arrest her, in violation of Article 1, Sections 9 and 12 of the Florida Constitution.   Doc. No. 17, at 9.   As discussed in the first dismissal order, because Reynolds seeks monetary damages, she does not have a cognizable claim under the Florida constitution.   *See* Doc. No. 15, at 11 (and cases cited therein).   Thus, the undersigned presumes that Reynolds seeks to proceed in Count I of the amended complaint on a false arrest tort claim.[11]

"The essential elements of a cause of action for false arrest include: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or 'color of authority'; and (4) which is unreasonable and unwarranted under the circumstances."   *Mbano v. Kriseman*, No. 8:14-cv-1923-T-30TBM,  2014 WL 5782802,  at *4 (M.D. Fla. Nov. 6, 2014) (citations omitted).   "Under Florida law, the existence of probable cause bars a claim for false arrest, false imprisonment, or malicious prosecution."   *Vasconez v. Hansell*, No. 6:12-cv-236-Orl-31DAB,  2013 WL 1968640,  at *5 (M.D. Fla. May 13, 2013) (citing *Von Stein v. Brescher*, 904 F.2d 572, 584 n.19 (11th Cir. 1990)).   However, unlike a false arrest claim asserted under 42 U.S.C. § 1983,  probable cause is an affirmative defense to a claim of false arrest under Florida law.   *Rankin*, 133 F.3d at 1436.[12]   "Florida law allows a court to consider affirmative

---

[11]  The undersigned notes that Reynolds's argument with respect to Count I in her response in opposition to the motion to dismiss focuses solely on state tort law, and nowhere discusses the Florida Constitution.   *See* Doc. No. 22, at 7-11.

[12]  Accordingly, Defendants bear the burden of proof of demonstrating the existence of probable cause as to the state law claim for false arrest; however, Reynolds has the burden of demonstrating the absence of probable cause in order to succeed on her § 1983 claim.   *See Rankin*, 133 F.3d at 1436.

defenses in resolving a motion to dismiss where the complaint 'affirmatively and clearly shows the conclusive applicability of the defense to bar the action.'" *Perlman v. Bank of Am., N.A.*, 561 F. App'x 810, 817 (11th Cir. 2014) (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2004)).

As discussed above, the undersigned recommends that the Court find that the factual allegations of the complaint are sufficient to call into question the existence of probable cause for Reynolds's arrest. This is not the end of the analysis, however. The Court must now address whether Reynolds's complaint contains sufficient factual allegations to overcome the statutory immunity provided to law enforcement officers under Florida law.

Pursuant to Section 768.28 of the Florida Statutes, law enforcement officers cannot be held personally liable for state tort claims unless they acted in bad faith, with malicious purpose, or "in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a); *see also* Fla. Stat. § 741.29(5) ("No law enforcement officer shall be held liable, in any civil action, for an arrest based on probable cause, enforcement in good faith of a court order, or service of process in good faith under this chapter."). "The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state . . . shall be by action against the governmental entity," unless the act or omission "was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Florida courts have construed bad faith under § 768.28 to require actual malice. *Gurrera*, 657 F. App'x at 892 (citation omitted). The presence of probable cause "contradicts any suggestion of malicious intent or bad faith." *Cottam v. City of Wildwood*, 750 F. App'x 791, 795 (11th Cir. 2018) (citing *Wood v. Kesler*,

323 F.3d 872, 884 (11th Cir. 2003)).   In addition, not every arrest lacking probable cause is made in bad faith.   *Dunn v. City of Boynton Beach*, 192 F. Supp. 3d 1310, 1325 (S.D. Fla. 2016).

In the amended complaint, Reynolds alleges that Officer Clayton acted in bad faith by fabricating facts in his police report to charge her with domestic battery.   Doc. No. 17 ¶ 50.   As discussed above, Reynolds goes into great detail and provides specific examples of how Officer Clayton lacked even arguable probable cause to arrest Reynolds, and instead used and crafted statements that he knew were false in order to arrest Reynolds.   An allegation that false statements in an affidavit were used to fabricate probable cause to support the arrest is a sufficient allegation of bad faith under § 768.29.   *See Sada v. City of Altamonte Springs*, No. 6:09-cv-506-Orl-31KRS, 2009 WL 3334184, at *3 (M.D. Fla. Oct. 7, 2009); *see also Evans, Jr. v. City of Edgewater, Fla.*, No. 6:15-cv-911-Orl-31DAB, 2015 WL 4911415 at *2 (M.D. Fla. Aug. 17, 2015) (finding allegations that there was no basis to believe plaintiff was committing or about to commit an offense, but was arrested anyway are sufficient to implicate the bad faith exception to statutory immunity at the motion to dismiss stage); *Reyes v. City of Miami Beach*, No. 07-22680-CIV, 2008 WL 686958 (S.D. Fla. Mar. 13, 2008) (holding that to establish a claim of individual liability under § 768.28(9)(a), a plaintiff "need only plead facts indicative of malice or bad faith - not facts that are *so* egregious that they could *only* indicate malice or bad faith.").

Thus, taking all of the allegations of the amended complaint as true, I recommend that the Court find that Reynolds has stated a false arrest claim sufficient to survive a motion to dismiss on the basis of statutory immunity.[13]

> 2. *Count II – Negligent Infliction of Emotional Distress – the City.*

---

[13]  And as with the defense of qualified immunity, Officer Clayton will be free to reassert this defense at the summary judgment stage.

In Count II of the amended complaint, Reynolds asserts a claim for NIED against the City. Doc. No. 17, at 10.   To sufficiently plead a claim for NIED, the complaint must allege that: (1) the plaintiff suffered a physical injury; (2) the physical injury was caused by the psychological trauma; (3) the plaintiff was "involved in some way in the event causing the negligent injury to another"; and (4) the plaintiff had "a close personal relationship to the directly injured person." *Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla. 1995).

Under Florida law, a claim for NIED is "governed by the judicially-created 'impact rule' designed to assure the validity of claims for emotional distress." *Echeverria v. BAC Home Loans Servicing, LP*, 900 F. Supp. 2d 1299, 1304 (M.D. Fla. 2012), *aff'd*, 523 F. App'x 675 (11th Cir. 2013) (citations omitted).

> "The impact rule . . . requires that before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact. Although Florida courts have carved out limited exceptions to the impact rule in extraordinary circumstances, [these exceptions] have been narrowly created and defined in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and the lack of countervailing policy concerns, have surmounted the policy rational[e] undergirding application of the impact rule.

*Id.* (citations and quotation marks omitted).   Under Florida law, there are two bases for recovery: "(1) one experiences a physical impact during the incident and suffers emotional distress stemming from that incident; or (2) one does not experience a physical impact but is involved in the incident and experiences emotional distress so severe that it manifests as physical injury." *Seybold v. Clapis*, 966 F. Supp. 2d 1312, 1315 (M.D. Fla. 2013).

The City moves to dismiss Count II solely based on the argument that Reynolds failed to sufficiently allege a qualifying impact under Florida law. Doc. No. 21, at 8.   In her amended complaint, Reynolds only alleges that she was subjected to "an unlawful arrest and unreasonable conditions of confinement, including no bond," that the City "breached its fiduciary duty to provide

official policy that does not violate a citizen's constitutional rights secured by the Florida Constitution and the United States Constitution," and as a result of the City's "negligent infliction of harmful physical impact and severe emotional distress" upon Reynolds, she suffered physical and emotional damages. Doc. No. 17 ¶¶ 56, 57, 60. Nowhere does Reynolds further identify the alleged "harmful physical impact" and in fact does not allege touching of any sort by Officer Clayton or anyone else acting on behalf of the City.[14]

Reynolds makes two arguments in response, neither of which I find persuasive. First, Reynolds contends that her case falls within one of the exceptions to the impact rule because her false arrest resulted in defamation to her reputation. Doc. No. 22 ¶ 47. Although Florida recognizes that the impact rule does not apply to the intentional tort of defamation, *Rowell v. Holt*, 850 So. 2d 474, 478 n.1 (Fla. 2003), Reynolds has not alleged a claim for defamation. She has not asserted any damages to her reputation from the publication of the fact of her arrest and/or her mugshot; nor has she alleged that any *false* information about her arrest and/or detention was published. *See, e.g.*, *In re Nofziger*, 361 B.R. 236, 245 (Bankr. M.D. Fla. 2006) (emphasis added) (definition of defamation: "the unprivileged publication of *false* statements which naturally and proximately result in injury to another").[15] Rather, she has only asserted a *negligence* claim based on her purported unlawful arrest and overnight detention.[16]   *See* Doc. No. 17 ¶ 56.

---

[14] While Reynolds alleges repeatedly that she was arrested and incarcerated, she does not allege that she was ever handcuffed or touched in any manner by Officer Clayton or any other person.

[15] While Reynolds clearly alleges that the police report was fabricated, she does not allege that the police report was ever disseminated or published, nor does she allege that any false statements were made about her arrest to any media outlet.   And no reasonable inferences can be made from the allegations of the amended complaint otherwise.

[16] Reynolds cites only one decision in her response, *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 208 (Fla. 2007).   This decision, however, does not aid her case.   *Abril* does not address defamation to reputation damages; it involves the relationship between the impact rule and Florida's HIV testing statutory scheme, which expressly allows for the recovery of emotional distress damages where HIV status information is unlawfully disclosed.

Reynolds's second argument is based on her contention that she did in fact suffer a physical impact by virtue of her false arrest and imprisonment, and that she suffered physical damages in the form of dizziness, headaches, numbness, tingling, visual disturbances, and anemia immediately following her arrest. Doc. No. 22 ¶ 51. She also alleges that she suffered extensive mental anxiety, as well as physical and emotional distress due to the arrest, and as a result of the arrest, she had to undergo three blood transfusions on May 14, 2018. *Id.* ¶ 52.

Reynolds does not cite any authority for her proposition that an arrest and incarceration are qualifying "impacts" for an NIED claim under Florida law. Doc. No. 22, at 11–12. It does not appear that the Florida Supreme Court has spoken on this point, however at least one Florida court has held to the contrary. *Fernander v. Bonis*, 947 So. 2d 584, 590 (Fla. 4th Dist. Ct. App. 2007) (holding that that there is no general exception to the impact rule for emotional harm resulting from a period of wrongful incarceration); *see also Mbano v. Kriseman*, No. 8:14-CV-1923-T-30TBM, 2014 WL 5782802 at * (M.D. Fla. Nov. 6. 2014) (dismissing NIED claim based on unlawful arrest where plaintiff failed to allege any physical injury or emotional stress flowing from injuries sustained in an impact). In addition, other Florida courts have noted that allegations of headaches, diabetes, sleep apnea, stress, insomnia, anxiety, loss of appetite, hair loss, and bowel trouble "are not the sort of . . . discernable physical injuries" that satisfy the impact rule. *See, e.g.*, *Elliott v. Elliott*, 58 So. 3d 878, 882 (Fla. 1st Dist. Ct. App. 2011).[17]

Because Reynolds relies solely on her arrest and incarceration as the qualifying "impact" for her NIED claim, and the only alleged physical manifestations she suffered include mental anxiety,

---

[17] *But see Gomez v. Wells Fargo Bank*, No. 13-23420-CIV, 2014 WL 11878882, at *6 (S.D. Fla. Jan. 7, 2014) (denying motion to dismiss NIED claim, predicting Florida Supreme Court would find sufficient physical impact for NIED claim when plaintiff was wrongfully arrested at gunpoint in front of wife and daughters and subsequently detained in federal prison).

emotional distress, dizziness, headaches, numbness, tingling, visual disturbances, and anemia, I find that Florida law currently does not support such a claim. I therefore recommend that the Court dismiss Count II because Reynolds has not sufficiently alleged a qualifying impact for an NIED claim under Florida law. *See Elliott*, 58 So. 3d at 882; *Fernander*, 947 So. 2d at 590.

     C.    <u>Leave to Amend</u>.

Defendants ask that Counts I and II of Reynolds's amended complaint be dismissed with prejudice, but do not specifically make this request in Counts III through V. Doc. No. 21, at 7, 8. Reynolds requests, however, that she be permitted leave to amend if any of the claims in the amended complaint are dismissed. Doc. No. 22 ¶¶ 45, 54, 68, 76, 80.

Federal Rule of Civil Procedure 15(a) requires that leave to amend a complaint should be freely given when justice so requires. However, as the Supreme Court recognized in *Foman v. Davis*, 371 U.S. 178, 182 (1962), leave to amend may be denied based on the factual circumstances of the case, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ." The Eleventh Circuit has found that denial of leave to amend based on futility is justified when the complaint as amended would still be subject to dismissal. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (quotation omitted).

It is unclear whether Reynolds can amend her claims in such a way that would survive another motion to dismiss. However, I note that Reynolds, who is represented by counsel, did successfully correct the deficiencies identified by the Court in the prior order of dismissal, and has made a timely request for leave to amend. *Cf. Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 544-45 (11th Cir. 2002) (holding that a district court is not required to grant a plaintiff

who is represented by counsel leave to amend the complaint *sua sponte* where counsel did not request leave to amend).   Therefore this is not a case where there have been repeated, unsuccessful attempts to amend.   I further note that the discovery period remains open until September 30, 2019, dispositive motions are not due until November 1, 2019, and Defendants have not sought dismissal with prejudice on any other claims.   Therefore, it would appear that any prejudice to Defendants by allowing Reynolds one final "bite at the apple" would be minimal at best.   Accordingly, I respectfully recommend that Reynolds be given one final opportunity to amend her claims in Counts III, IV, and V against the City.

## V.   RECOMMENDATION.

For the foregoing reasons, I **RESPECTFULLY RECOMMEND** that the Court:

1.   **GRANT in part and DENY in part** Defendant's, City of Daytona Beach and Austin Clayton's Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, the Defense of Qualified Immunity, and State Law Immunity Under § 768.28(9), Fla. Stat. (Doc. No. 21);

2.   **DISMISS** Counts II, IV, and V;

3.   **DISMISS** Count III against the City only;

4.   **DENY the motion to dismiss in all other respects;** and

5.   **GRANT** Reynolds leave to file a second amended complaint within a time set by the Court.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 22, 2019.

*Leslie R. Hoffman*

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy