UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HATTIE MAE REYNOLDS,

    Plaintiff,

v.                                   Case No: 6:18-cv-1921-Orl-28LRH

CITY OF DAYTONA BEACH, AUSTIN
CLAYTON and THOMAS GOBLE,

    Defendants.

## ORDER

Defendant City of Daytona Beach moves to dismiss Counts II, III, and IV of Plaintiff Hattie Mae Reynolds's Second Amended Complaint. (See Doc. 31). The City alleges that the Second Amended Complaint fails to state a claim under 42 U.S.C. § 1983 for municipal liability. Reynolds disagrees.[1] (See Doc. 37). The City is correct that the Second Amended Complaint fails to state a viable claim for municipal liability.

Upon recommendation of the assigned United States Magistrate Judge, the Court previously dismissed Reynolds's three claims against the City for failure to state a claim. (See Doc. 24). The Court, however, gave Reynolds leave to file a Second Amended Complaint. In the Second Amended Complaint, Reynolds again asserts three claims against the City. And again, the City contends that each of the three claims asserted against it should be dismissed because Reynolds fails to identify any policy, custom, or practice that caused the alleged constitutional violations.

---

[1] Though Reynolds failed to timely respond to the City's motion, see M.D. Fla. Local Rule 3.01(b), her response does not alter the Court's decision.

A municipality "cannot be held vicariously liable under § 1983 for constitutional violations committed by its officers." Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 693–94 (1978)). Accordingly, to hold the City liable, Reynolds must "ultimately prove that the City had a policy, custom, or practice that caused the [alleged constitutional] deprivation," id., or that the City failed to adequately train its law enforcement officers and that "failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact," Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1052 (11th Cir. 2014) (alteration in original) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

At this stage, to plead a municipal liability claim based on a policy or custom, Reynolds needs to "identify a municipal 'policy' or 'custom' that caused [her] injury." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (quoting Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997)). In Count II, Reynolds asserts that Defendants Austin Clayton and Thomas Goble arrested her without probable cause and that the City's policy of "allowing its sworn law enforcement officers to arrest a citizen regardless of probable cause" caused that constitutional injury. (See Doc. 27 ¶ 59). And Count IV alleges that Clayton and Goble falsely imprisoned Reynolds and deprived her of due process in accordance with the City's policy requiring that those suspected of domestic violence offenses be held overnight without bond. (See id. ¶¶ 80–81). In support of these contentions, Reynolds identifies a single official policy—Daytona Beach Police Department Departmental Standards Directive 626.11—which, according to Reynolds, provides: "An officer '*shall*' arrest upon probable cause, without a warrant, when investigation determines that an act of domestic violence or child abuse has occurred." (Id. ¶ 60 (emphasis in

original)). But even according to Reynolds, the directive provides that an officer "shall arrest *upon probable cause*," which directly contradicts Reynolds's contention that the City has a policy of allowing its officers to arrest citizens without probable cause. And that policy says nothing about the bond process for those suspected of committing domestic violence offenses. Because Reynolds failed to plead facts that connect the official policy she identified to the alleged injuries she suffered, she does not state a municipal liability claim based on an official city policy.

In lieu of pleading that a municipal policy caused a constitutional deprivation, Reynolds may sufficiently plead a claim for municipal liability by alleging that the City had a custom or practice of allowing arrests without probable cause or falsely imprisoning individuals without due process. To base a § 1983 municipal liability claim on a custom or practice, Reynolds must plead facts that show "a widespread practice that, 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991) (further internal quotation marks omitted) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).

Reynolds fails to sufficiently plead that the City had a widespread custom or practice of allowing arrests without probable cause or falsely imprisoning individuals without providing due process of law. As to arrests without probable cause, the Complaint identifies seven state court cases in which the plaintiffs alleged that the City had a custom or practice of arresting individuals without probable cause. But Reynolds does not provide any facts regarding those cases. Instead, she merely provides the conclusory allegation that the cases involve individuals who were subject to arrest without probable cause. That

3

is not sufficient. Cf. Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987) ("[Plaintiff] never demonstrated that past complaints of police misconduct had any merit. Indeed, the number of complaints bears no relation to their validity."); Whitaker v. Miami–Dade Cty., 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) ("[A] plaintiff certainly cannot establish a widespread unconstitutional practice through prior constitutional actions.").

As to imprisonments without due process of law, Reynolds points to six of the seven cases she identified with respect to her false arrest claim. Again, she merely recites the conclusory statement that the plaintiffs in those cases were arrested without probable cause. And she then identifies the length of their stay in jail before they were offered bond. As already noted, merely identifying these prior court cases, without pleading facts that actually show that a similar constitutional violation occurred, is not sufficient to allege that the City had a custom or practice of imprisoning individuals without due process of law. Cf. Brooks, 813 F.2d at 1193; Whitaker, 126 F. Supp. 3d at 1321. Because Reynolds has not sufficiently alleged that an official policy, custom, or practice was the moving force behind her alleged false arrest or false imprisonment, Count II, insofar as it relates to the City, and Count IV will be dismissed.

Finally, Count III of the Second Amended Complaint alleges that the City failed to train its law enforcement officers who are "accused of arresting individuals without probable cause." (Doc. 27 ¶ 74). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, 489 U.S. at 388. "[A] government entity 'is not automatically liable under section 1983 even if it inadequately trained or supervised its [ ] officers and those officers violated [a plaintiff's] constitutional

rights.'" Daniel v. Hancock Cty. Sch. Dist., 626 F. App'x 825, 833 (11th Cir. 2015) (alterations in original) (quoting Gold, 151 F.3d at 1350). Rather, there are "'limited circumstances' in which an allegation of a failure to train or supervise can be the basis for liability under § 1983." Id. at 833–34 (quoting Gold, 151 F.3d at 1350). "[T]hese 'limited circumstances' arise 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" Id. at 834 (quoting City of Canton, 489 U.S. at 387, 388). And "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011) (quoting Bryan Cty., 520 U.S. at 409).

Reynolds identifies several court cases that she claims show that the City had a pattern of similar constitutional violations. But these cases—one of which settled, one of which resulted in attorney's fees paid to a plaintiff, two of which resulted in plaintiffs "successfully assert[ing] civil rights claims," (see Doc. 27 ¶¶ 15(c), 15(d)), and one of which involved a plaintiff "assert[ing] a claim for false arrest," (see id. ¶ 15(e))—fall woefully short of sufficiently alleging that the City is plagued by a pattern of similar constitutional violations by untrained employees. And Reynolds's assertion that two officers who played no role in this case have complaints in their files regarding their veracity fares no better. Because Reynolds fails to sufficiently allege a pattern of constitutional violations by untrained employees, and because this case does not involve a situation where the need for additional training was obvious, see City of Canton, 489 U.S. at 390, Reynolds's failure-to-train claim, Count III, fails.

Accordingly, it is **ORDERED** as follows:

1. The City's Motion to Dismiss Second Amended Complaint (Doc. 31) is **GRANTED**.

2. Count II of the Second Amended Complaint is **DISMISSED with prejudice** insofar as it relates to the City.

3. Counts III and IV of the Second Amended Complaint are **DISMISSED with prejudice.**

4. The Clerk of the Court is directed to terminate the City of Daytona Beach as a party.

**DONE** and **ORDERED** in Orlando, Florida, on July 31st, 2019.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties

6