# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

HATTIE MAE REYNOLDS,

 Plaintiff,

v.          Case No: 6:18-cv-1921-Orl-28LRH

AUSTIN CLAYTON and THOMAS GOBLE,

 Defendants.

## ORDER

In her Second Amended Complaint (Doc. 27), Plaintiff Hattie Mae Reynolds brought claims of false arrest under federal and Florida law against Defendants City of Daytona Beach (the City) and Officers Austin Clayton and Thomas Goble in their individual and official capacities. The City moved to dismiss all claims against it, (Mot. to Dismiss, Doc. 31), and the Court granted the motion, (Order, Doc. 38). Clayton and Goble now move for summary judgment on the remaining claims. (Doc. 50). For the reasons set forth below, the motion is due to be granted.

### I. Background

On May 5, 2018, Clayton and Goble arrived at Reynolds's home in response to two 911 calls placed by Reynolds in which she reported that her granddaughter, Janeen Williams, was "sassing her," "cussing at her," and refusing to leave. (Clayton Dep. at 30–31; Reynolds Dep. at 7; Charging Aff. at 1).[1] When Clayton and Goble interviewed Williams

---

[1] The depositions, Charging Affidavit, and other exhibits to the Motion for Summary Judgment are filed as Docs. 50-1 through 50-6. Citations are to deposition page numbers rather than to electronic record page numbers.

regarding the altercation, Williams repeatedly alleged that Reynolds made physical contact with Williams's face using a shoe. (Goble Dep. at 13). Per Daytona Beach Police Department policy and Florida law, Clayton and Goble completed an investigation and arrested Reynolds for battery. (Clayton Dep. at 41; Goble Dep. at 39; Charging Aff. at 1).

Reynolds was 95 years old at the time of the incident. (Charging Aff. at 1). She now brings claims for false arrest pursuant to 42 U.S.C. § 1983 and Florida law against Clayton and Goble in their individual and official capacities.

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). "However, we draw these inferences only 'to the extent supportable by the record.'" Penley v. Eslinger, 605 F.3d 843, 848 (11th Cir. 2010) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "Thus, the requirement to view the facts in the nonmoving party's favor extends to genuine disputes over material facts and not where all that exists is 'some metaphysical doubt as to material facts.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

## III. Discussion

### A. Official Capacity Claims

As an initial matter, because Reynolds's claims against the City have already been dismissed and the claims against Clayton and Goble in their official capacities are equivalent to claims against the City, the claims against Clayton and Goble in their official capacities also must be dismissed. See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly . . . .").

### B. State Law Claim & Florida Immunity (Individual Capacities)

In Count I, Reynolds alleges false arrest under Florida law. Clayton and Goble argue that they are immune from liability under section 768.28(9)(a), Florida Statutes, because Reynolds has not produced facts showing Clayton and Goble acted in bad faith.[2] The Court agrees that the record is devoid of indicia of bad faith.

"No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." § 768.28(9)(a), Fla. Stat. The parties do not dispute that the

---

[2] Clayton and Goble also claim immunity under section 741.29(5), Florida Statutes. However, since the Court has found immunity under section 768.28(9)(a), this argument under domestic-violence-specific immunity will not be addressed.

officers were acting within the scope of their employment when they arrested Reynolds. "Courts construing the bad faith prong of section 768.28 use the actual malice standard, which means the conduct must be committed with ill will, hatred, spite, or an evil intent." Eiras v. State Dep't of Bus. & Prof'l Reg. Div. of Alcoholic Bevs. & Tobacco, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017) (internal citations and quotations omitted). Allegations of such behavior "may not be stated as mere legal conclusions, but instead must be supported by facts." Duquesne v. City of Miami Beach, No. 12-20575-CIV-HUCK/BANDSTRA, 2012 U.S. Dist. LEXIS 103993, at *35 (S.D. Fla. July 26, 2012).

Reynolds cites the Charging Affidavit as evidence of Clayton and Goble's bad faith, claiming that Clayton and Goble falsified the affidavit to try to support probable cause that did not otherwise exist. Clayton—an officer new to the police force and still in training at the time of the arrest—wrote the affidavit, and Goble—his training officer at the time—reviewed it. In relevant part, the affidavit reads:

> Officer Goble and I arrived at [plaintiff's address], and made contact with Hattie Reynolds (D1). D1 stated that Janeen Williams (V1) her granddaughter would not get out of the bed and was screaming and swearing at D1. D1 also stated that she wanted V1 to leave the home and would not listen and said she was not leaving. D1 than [sic] began to start yelling and smacked V1 in the face with the shoes she had on. Then D1 stated that she then went to her living room and called Volusia County Dispatch and requested for Law Enforcement to respond to the residence.

(Charging Aff., Doc. 50-6 at 1). The Court acknowledges that the affidavit is not the epitome of clarity; however, that is far from the applicable standard of "ill will, hatred, spite, or an evil intent." Officer Clayton's sometimes-confusing use of the pronouns "her" and "she" is unhelpful, but there is nothing to suggest that he intentionally wrote the affidavit that way in order to present a misleading factual summary. And while the Court recognizes that Clayton's statement that "D1 than [sic] began to start yelling and smacked V1 in the

4

face with the shoes she had on" may be read to suggest that Reynolds admitted to the accusation, that is not what the statement says.

As further evidenced in the next section, the record does not support Reynolds's allegations of bad faith on the part of Clayton or Goble. Therefore, under section 768.28(9)(a) Clayton and Goble are entitled to immunity from Reynold's state law claim, and summary judgment must be granted on Count I.

### C. Federal Law Claim & Qualified Immunity (Individual Capacities)

Clayton and Goble assert that they are entitled to qualified immunity on Count II—Reynolds's federal false arrest claim. "Qualified immunity provides protection for government officials performing discretionary functions and sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Brannon v. Finkelstein, 754 F.3d 1269, 1278 (11th Cir. 2014) (quoting Storck v. City of Coral Springs, 354 F.3d 1307, 1313 (11th Cir. 2003)). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The parties do not dispute that Clayton and Goble were performing discretionary functions when they interacted with Reynolds. See Doc. 50 at 9; Doc. 52 at 6; see also Bercini v. City of Orlando, No. 6:15-cv-1921-Orl-41TBS, 2016 U.S. Dist. LEXIS 195772, at *7 (M.D. Fla. Sept. 30, 2016) ("[A]n officer making an arrest is acting within his discretionary duty." (citing Crosby v. Monroe Cty., 394 F.3d 1328, 1332 (11th Cir. 2004))). Accordingly, the Court must determine: (1) whether the facts alleged show "that the [defendants] violated a statutory or constitutional right," and (2) whether that "right was 'clearly established' at the time of the challenged conduct." al-Kidd, 563 U.S. at 735 (citing Harlow

v. Fitzgerald, 457 U.S. 800, 818 (1982)). "[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)). Clayton and Goble's claim that they are entitled to qualified immunity can be resolved at the first prong of the analysis because the established facts do not show that Reynolds's constitutional rights were violated.

Reynolds alleges that Clayton and Goble violated her Fourth Amendment right to be free from unreasonable seizures because they made a warrantless arrest without probable cause.[3] See Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir. 1990) ("A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim."). "For probable cause to exist . . . an arrest must be objectively reasonable based on the totality of the circumstances." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (citing Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998)). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. (quoting Rankin, 133 F.3d at 1435).

Probable cause requires more than mere suspicion, but it does not require the same level of definiteness that is necessary to support a conviction. Id. "An arresting officer is required to conduct a reasonable investigation to establish probable cause." Rankin, 133 F.3d at 1435. However, an officer does not need to eliminate every possibility that the alleged offender is innocent. Id. at 1436. "Probable cause is 'judged not with clinical

---

[3] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

6

detachment but with a common sense view to the realities of normal life.'" Id. (quoting Marx, 905 F.2d at 1506).

For qualified immunity purposes, *arguable* probable cause is all that is required. See Lee, 284 F.3d at 1195. "Arguable probable cause simply means that 'reasonable officers in the same circumstances and possessing the same knowledge as the [defendant-officers] could have believed that probable cause existed to arrest.'" Manners v. Cannella, 891 F.3d 959, 969 (11th Cir. 2018); see also Lee, 284 F.3d at 1195. Whether arguable probable cause exists logically depends on the elements of the alleged crime. However, "[a]rguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." Lee, 284 F.3d at 1195 (quoting Scarbrough v. Myles, 245 F.3d 1299, 1302–03 (11th Cir. 2001)).

Here, Reynolds was arrested for committing a battery in violation of section 784.03(1)(a)1, Florida Statutes. Therefore, Clayton and Goble needed to have reasonably believed that they had probable cause to arrest Reynolds for battery. A battery occurs when a person: (1) "[a]ctually and intentionally touches or strikes another person against the will of the other" or (2) "[i]ntentionally causes bodily harm to another person." § 784.03(1)(a), Fla. Stat.

Most of the record evidence presented to the Court does little to clarify whether arguable probable cause existed to arrest Reynolds. Many of Reynolds's statements in her deposition contradict statements in Clayton's and Goble's depositions, and Clayton and Goble contradict each other as to certain relevant facts. As previously stated, at the summary judgment stage the Court must view the facts in the light most favorable to

7

Reynolds. However, the Court finds the language of Scott v. Harris particularly applicable here:

> There is, however, an added wrinkle in this case: existence in the record of a videotape capturing the events in question. There are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened. The videotape quite clearly contradicts the version of the story told by [plaintiff]."

Scott v. Harris, 550 U.S. 372, 378 (2007).

In this case, the police bodycam video—which is not challenged by Reynolds—clearly shows that Clayton and Goble performed an adequate investigation and obtained enough information to establish arguable probable cause. (See Video, Doc. 50, Ex. 4). Although Reynolds's deposition seems to suggest that Clayton and Goble did a cursory investigation in which they chose not to interview Reynolds and then abruptly arrested her after she sat quietly observing Williams's interview, the video tells a completely different story. The officers began their investigation with an interview of Reynolds and further questioned her later in the video. The officers' first interview with Reynolds was interrupted because as soon as Williams entered the room and began talking to Clayton and Goble, Reynolds began yelling at her to "shut up" and telling her to get out of Reynolds's home. Clayton and Goble repeatedly had to tell Reynolds to be quiet and return to a seat in the other room because Reynolds continued to yell and act aggressively towards Williams. Meanwhile, Williams repeatedly alleged that Reynolds physically struck her in the face with a shoe, which Williams appeared to identify as the shoe Williams was wearing.[4] Goble explicitly asked Williams if Reynolds actually struck her or if Williams was only making the

---

[4] In the video, Williams stated that she did not want to press charges against Reynolds; however, she did want to complete a written statement. No written statement is in the record.

8

accusation because she was upset; Williams, without hesitation, repeated the accusation. Williams can later be observed retelling the accusation to a family member who arrived at the scene. Although Reynolds denied in the video that she struck Williams with a shoe, she admitted that she tried to take Williams's phone from her while Williams was talking to someone and that she confronted Williams because she wanted her out of her bed and out of the house.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott, 550 U.S. at 380. While the Court is sympathetic to Reynolds in light of her age and the events surrounding her arrest, the video shows that the totality of the circumstances—including Williams's accusation and Reynolds's continued aggression towards Williams in the officers' presence—established arguable probable cause for Clayton and Goble to arrest Reynolds for battery.[5] A reasonable officer in the same circumstances and possessing the same knowledge could have believed that while Williams was lying on the bed, Reynolds took Williams's shoe off of her foot and struck Williams in the face with it.

Reynolds further alleges in Count II that Clayton and Goble violated her Fourth Amendment rights when they fabricated statements in the Charging Affidavit to establish probable cause. "[F]alsifying facts to establish probable cause is patently unconstitutional and has been so long before [Plaintiff's arrest]." Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004). As discussed in more detail in connection with the state law claim,

---

[5] Because the Court finds arguable probable cause existed and that is all that is required for qualified immunity to apply, the Court will not discuss whether actual probable cause existed.

Reynolds's argument that Clayton and Goble fabricated statements in the Charging Affidavit also fails. After reviewing the video, it is clear that Clayton and Goble were very respectful and professional in their interactions with Reynolds. They took their time to thoroughly investigate the situation and to accommodate Reynolds above and beyond what they were required to do as they placed her under arrest and put her in the squad car. Clayton and Goble did not violate any clearly established constitutional rights, and they are entitled to qualified immunity. Accordingly, summary judgment is granted on Count II.[6]

## IV. Conclusion

It is hereby **ORDERED** that Clayton and Goble's Motion for Summary Judgment (Doc. 50) is **GRANTED** as to both claims. The Clerk is directed to enter judgment providing that Reynolds takes nothing on any of her claims against Clayton and Goble. Thereafter, the Clerk shall close the case.

**DONE** and **ORDERED** in Orlando, Florida, on December 23rd, 2019.

_JOHN ANTOON II_
United States District Judge

Copies furnished to:
Counsel of Record

---

[6] The Court need not address Reynolds's argument that the Daytona Beach Police Department policy conflicted with Florida law. Even if the policy did somehow conflict with Florida law in a way that would make it invalid, Clayton and Goble had probable cause to believe a violation of Florida law had occurred, thus making the arrest lawful. See Lee v. Ferraro, 284 F.3d 1188, 1196 n.4 (11th Cir. 2002).